RIVES vs. PETTIT, ET AL.

Where one circuit judge interchanged courts with another, under authority of an act of the Legislature, invalid, because it prescribed a *permanent*, and not a *temporary* interchange of courts, the parties having voluntarily submitted to his jurisdiction, and not attempted to question his authority, HELD that his acts were *valid*.

Upon general principles, the acts of a judge, exercising his power by virtue of an act of the Legislature, would be valid as to the public and third persons, though the law were afterwards decided to be constitutional.

THIS was a case determined in the Chicot Circuit Court, in December, 1841, before the Hon. WILLIAM K. SEBASTIAN, one of the circuit

Rives *vs.* Pettit et al.

judges. Only one question was presented in this, and many other cases, decided at the present term. Under the act of the Legislature, declared unconstitutional in *Knox vs. Bierne & Byrnside, ante p.* 460, the Hon. ISAAC BAKER, Judge of the Second Judicial Circuit, which includes the county of Chicot, changed with the Hon. WILLIAM K. SEBASTIAN, Judge of the First Judicial Circuit. The record, in this particular case, stated the proceedings to have been had before "the Hon. WILLIAM K. SEBASTIAN, *Judge of the Chicot Circuit Court.*" The questions arising in the cases were argued in the several cases by different attorneys of the court, and the Reporter presents all the arguments, in this case, which can be printed under the rule of the court.

*Ashley & Watkins*, for the plaintiff in error. The only question arising, is, whether this court will, *ex officio*, take notice of the fact, that at the time this judgment was rendered, Isaac Baker was Judge of the Second Judicial Circuit, of which the county of Chicot is one, and that William K. Sebastian was Judge of the Second Judicial Circuit.

There is no question but that a court is bound to know all public laws and customs, and matters of general notoriety.

The rule laid down by the court of King's Bench, in *Hook vs. Shipp,* 2 *Str.* 1080, that they are not obliged to take notice, judicially, who are the judges of Westminster Hall, except those of their own court, has been modified to some extent, in the case of *Ripley vs. Warren,* 2 *Pick.* 592.

The courts take notice of the civil divisions of the State; *People vs. Reese,* 7 *Cowen,* 429. 2 *Ins.* 557. *Comb.* 460. of its officers, *Ogle vs. Norcliffe, Ld. Raym.* 869. 6 *Mod.* 74. of its own attorneys, *ex parte Hore,* 3 *Dowl.* 600. 1 *Chit.* 240. 1 *Stark.* 444. This court is then bound, judicially, to know the several circuits into which the State is divided. Would it also know whom the Legislature had elected for each circuit?

The constitution invests the Supreme Court with a superintending control over the circuit courts. A circuit court refuses to obey the

Rives *vs.* Pettit et al.

mandate of this court, then dies or resigns, would this court attach the successor for his contempt, or take notice of the vacancy?

But how is this disqualification to be made to appear upon the record? If by plea, then the judge claiming the right to sit as such, would be called upon to decide as to his own disability. No objection to his presiding was necessary, because the consent of the parties could not invest him with judicial power and authority. No objection was made in the case of *Blackmore et al. vs. State Bank*, 3 *Ark.* 309, in which the judgment was pronounced a nullity, and the proceedings *coram non judice.*

But another grave question is thought to be raised by the record; that is, that Sebastian, being Judge of the Chicot Circuit Court, though under an unconstitutional and void act, yet held that office under *color of right*, and being the judge, *de facto*, though not *de jure*, his judgments are valid as respects third persons. A circuit judge has no power or authority to do any act out of his own circuit. *Auditor vs. Davis et al.* 2 *Ark.* 502. See *The People vs. White*, 24 *Wend.* 539, 540, 541. Opinion of Chancellor WALWORTH, *J. J. Marshall*, 205, 206.

If Sebastian held that court voluntarily, and without reference to the law, he was the officer, *de facto*, of an unconstitutionally organized court; and if he held it by virtue of the law, he was the officer, *de jure*, of an illegally organized court. In either view, his acts are utterly void, because he was not an officer, *de facto*, who comes into a legal and constitutional office, *by color* of a legal appointment or election to that office, as in the case of a judge or officer informally elected, or whose commission is informal, or who has not been properly qualified; in which case all his acts would be valid as to third persons, until ousted by *quo warranto.*

*Hempstead & Johnson*, also for the plaintiff in error. The first important question is, of what the courts are bound to take notice, which cannot be better ascertained than by referring to authorities, and drawing the analogy from them.

In *Creighton vs. Bilbo*, 1 *Monroe* 138, it is said the court will judicially notice geography and history; in *Evans vs. Benton*, 3 *Monroe*

387, that the court will take judicial notice that certain persons are officers of government, even when the name of office is not inserted in their official acts.

The court will judicially take notice of the general course of business and transactions of human life.    *Duncan vs. Littell*, 2 *Bibb* 426. 1 *J. J. Marsh.* 290.

If gold and silver have ceased to be the circulating medium, the court will judicially know the fact.    So the character of the circulating medium, and popular language in relation to it; and any change in the popular meaning of words, the court will judicially know in construing contracts made at different times.·    *Lampton vs. Hazzard*, 3 *Monroe* 149.

The court will, *ex officio*, take notice of mutations in language.    1 *J. J. Marsh.* 287.

The courts take judicial notice of the civil divisions of the State, by statute.    *People vs. Bruges*, 7 *Cowen* 449.

The courts at Westminster will take judicial notice of the proceedings of the courts of the counties palatine, as well as of the courts of great sessions.    *Peacock vs. Bell*, 1 *Saund.* 74.

This court took judicial notice of the process of the great sessions. *Ibidem.*

Our courts can take notice, *ex officio*, of the laws of a sister State. *Foster vs. Taylor*, 2 *Tenn.* 191.

The courts are bound, *ex officio*, to know the *officers* of government appointed by the Legislature.    *Bennett vs. The State, Martin & Yerger's Rep.* 133.

The courts are presumed to know their own laws, and officers appointed under those laws.    *Stinson's Lessee vs. Russell*, 2 *Tenn.* 40.

This court is bound judicially to know that the Auditor of Public Accounts keeps his office at the seat of government, in the city of Little Rock.    *Auditor vs. Davies*, 2 *Ark.* 494.

Courts will take judicial notice of *public laws*, without pleading. *Packard vs. Hill*, 2 *Wend.* 411.    1 *Stark. Ev.* 170.    2 *Salk.* 566.    1 *Stra.* 498.    *Bca. Abr. Ev. F.*    1 *John. C.* 132.    *State vs. Ashley*, 1 *Ark.* 513.

In Louisiana, the courts recognize the signatures of judicial officers

74

appointed by the Governor, by and with the advice and consent of the Senate. *Despan vs. Swindler*, 3 *Martin* 705.

The signatures and official characters of the ancient Governors of Louisiana, are matters of public notoriety; and evidence of the genuineness of the former is not required. *Jones vs. Gale*, 4 *Martin* 635.

The signature of an officer to a bond which he is bound to take, proves itself. *Wood vs. Fitz*, 10 *Martin* 635.

We think it must be conceded, on reason and authority, that the courts are bound, *ex officio*, to notice all the judicial officers in the State.

The only question, therefore, is, are the acts of Baker or Sebastian good out of their respective circuits, as being officers, *de facto?*

Let us see how and where the distinction between officers, *de jure*, and *de facto*, originated.

During the reign of Henry the 6th, in 1422, the House of York asserted their dominant title; and after embruing the country in blood for seven years together, at last established, in the person of Edward the 4th. At his accession to the throne, after a breach in the succession that continued for three descents, and above three score years, the distinction of a king, *de jure*, and a king, *de facto*, began to be first taken, in order to indemnify such as had submitted to the late establishment; and to provide for the peace of the kingdom, by confirming all honors conferred, and all acts done by those who were now called the usurpers, not leading to disherison of the rightful heir. In *statute* 1, *Edward* 4, *c.* 1, the three Henrys are styled "late kings of England, successively, *in dede*, and *not of right.*"

This is Blackstone's account of the origin of the distinction. 1 *Bl. Com.* 204.

In the case of *The King vs. The Corporation of Bedford Levee*, 6 *East.* 368, *an officer, de facto, is defined to be one who has the* REPUTATION *of being the officer he assumes to be, and yet is not a good officer in point of law. Parker vs. Kett*, 1 *Ld. Raym.* 660, 661.

The principle for which we contend in this case, is, that the mere *possession* of an office, and *acting therein*, can never constitute an officer, *de facto*. There must be some *form of election*, otherwise it is clear *usurpation*. *King vs. Lyle*, 2 *Str.* 1090. 16 *Vin. Abr.* 144.

Rives *vs.* Pettit et al.

In *The People vs. Collins,* 7 *J. R.* 551, it is manifest there was an election, and also a swearing into office.

Such was also the case, in *Parker vs. Kett,* 1 *Ld. Raym.* 658.

Even in the case of an election, *merely colorable, without right, and clearly void,* the court ought to grant a mandamus, and not inquire into it by *quo warranto. Rex vs. Banks,* 3 *Burr.* 1454. *Rex vs. Cambridge Mayor,* 4 *Burr.* 2008.

Sebastian had no color of right, by virtue of any previous election, to hold any court in the *Second* Judicial Circuit; and his acts therein, as judge, were arbitrary and voluntary, because the Legislature have made no regulations respecting the judges of the circuit courts temporarily exchanging circuits, or holding courts for each other. *Const. sec.* 6, *art.* 12.

The provisions, therefore, that a judge shall be elected *for each circuit,* and who, during his continuance in office, shall reside and be a conservator of the peace within the circuit *for which he shall have been elected,* stand in full force, and entirely independent of the clause authorizing an exchange, inasmuch as the Legislature have never prescribed the regulations alluded to in that clause of the constitution. *Const. sec.* 4, 5, *art.* 6.

If it is admitted that reasons of public policy require that the acts of *de facto* ministerial officers should be held good, it by no means follows that the same principle should extend to *de facto* judicial officers.

The reason is obvious; the mere ministerial officer executes what the law commands, and he has no discretion. If he is too hasty or too negligent, he is responsible. If he is guilty of official misfesance, malfeasance, or nonfeasance, whereby the rights of third persons are affected, he is not only amenable to the aggrieved party, in a pecuniary point of view, but may be removed from office. In fine, his acts constitute no precedent for his successors.

With a judge, it is far different. He is invested with an ample discretion; for his judgments he is not amenable to the parties themselves; and, in short, few things short of absolute corruption, can put the tardy and unwieldy machinery of impeachment in motion against him. More than all, his judgments, orders, and decisions, form a pre-

cedent for after times; for to the records of our courts we must look for what the law is.

*Trapnall & Cocke,* contra. Although the act of the last Legislature, requiring the judges to interchange circuits, has been declared unconstitutional, still it cannot affect the valididity of the judgment in this case, for two reasons: 1st, Because the objection is not presented by the record. So far as it appears before this court, William K. Sebastian was the Judge of the Chicot Circuit Court, at the time of the trial of this cause. This court will not look to any thing dehors the record, impeaching the authority of Judge Sebastian to preside in the Chicot Circuit Court. Nor can this court judicially know the individual judges who preside over the respective circuit courts of this State. 1 *Chit. Pl.* 252. *Str.* 1226. *People vs. White,* 24 *Wend.* 540, 567, 568. And 2d, Because the acts of Judge Sebastian, while presiding in the Chicot Court, were the acts of a judge *de facto;* and, as such, will be valid. He exercised the functions of that office, under an act of the Legislature, conferring upon him authority to hold that court. He cannot, therefore, be considered an intruder into the office. He came in under color of legal right and public policy; and the security and permanency of individual rights alike require, in such cases, that the acts of the court should be held valid, and that the rights acquired under its adjudications should be protected and secured. *People vs. White,* 24 *Wend.* 520. *Wilcox vs. Smith,* 5 *Wend.* 231. *McInstry vs. Tanner,* 9 *J. R.* 125.

*Pike & Baldwin,* also contra. The principle that the acts of officers, *de facto,* are valid, applies as well to judges as to other officers. *The People vs. White,* 24 *Wend.* 520, 564. *Browning vs. Wheeler,* 24 *Wend.* 558. *Wilcox vs. Smith,* 5 *Wend.* 231. *The People vs. Collins,* 7 *J. R.* 549. *McInstry vs. Tanner,* 9 *J. R.* 125. *Potter vs. Luther,* 3 *J. R.* 486. *Reed vs. Gillett,* 12 *J. R.* 296. *King vs. Lisle, And.* 163. *Keyser vs. McKissam,* 2 *Rawle,* 139. *McKim vs. Somers,* 1 *Penns.* 297. *Mayo et al. vs. Stoneum,* 2 *Ala. N. S.* 390.

The principle of law in regard to all officers, judicial as well as ministerial, wise, salutary, and necessary, is this, that the acts of all pub-

lic officers, having the *presumptive* evidence of title by law, commission, election, or otherwise, and the actual possession of office, are valid, as far as they affect the interest of the public or third parties, and that they cannot be impeached collaterally; that the validity of acts of public officers shall not be impeached collaterally, on the ground that though they are in possession of office, and have entered upon it without usurpation, and under presumptive evidence of title, they are rightfully so in possession. *The People vs. White,* 24 *Wend.* 564. *Fowler vs. Beebe,* 9 *Mass.* 234. *Bucknam vs. Ruggles,* 15 *Mass.* 180. *Taylor vs. Skrine, Tr. Const. Rep.* 696.

An officer, *de facto,* is one who comes into a legal and constitutional office, by *color* of a legal appointment or election. 24 *Wend.* 539.

*By the Court,* DICKINSON, J. The record in this case states that the proceedings were had before a particular judge, by name, and it is contended that this court is bound to know that he was not commissioned for the circuit in which he presided, and, therefore, his acts were *coram non judice,* and utterly void. This case is peculiarly situated, and bears but little analogy to any one that has been previously decided by the Supreme Court of the United States, or any of the several courts of the Union. It must, therefore, be investigated and determined upon its own particular state of facts. The officer who presided, was acting in obedience to the authority of the Legislature, which this court has declared to be invalid, not because the General Assembly had not ample and plenary power over the subject upon which they legislated, but because in attempting to prescribe an interchange of circuits, they exceeded that power, in making the rule permanent and not temporary. The circuit court, in this instance, is a constitutional court, and always *in esse.* The judge who presided, was ineligible to the exercise of the office, for the time being. The inquiry now is, were his acts nullities, and absolutely void, as to third persons and the public, on this account, and that, too, in a case where the parties voluntarily submitted to his jurisdiction, never attempting to question his power? Do his acts bind until his power is vacated by a regular judicial process and trial? or is it lawful for each citizen, individually, or the community, in its aggregate capacity, to resist and

annul his authority? To whom belongs the power of rightly investi-
gating, and finally settling, the constitutionality or unconstitutionality
of an act of the Legislature? to the people or the judiciary? The in-
quiry solves the question. If to the people this power appertains, then
the authority of the government, while its acts are in the progress of
execution, is subject to the dominion of arms, and not to the rules of
law. This view of the case is strengthened by the consideration that
should the Legislature proceed to elect a person to fill the office of
judge, who, by the constitution, was disqualified to hold it, and should
the Governor commission him under this illegal election, and he take
possession of the office and administer justice, and afterwards his com-
mission should be vacated, would his acts in the mean time not bind
third parties and the public? They unquestionably would. Now, in
the case supposed, the officer would be unconstitutionally elected and
commissioned, but how could that affect his acts and proceedings, until
his authority and commission were regularly and properly abrogated?
His acts for the time being must be binding, because he was inducted
into the office under the appearance of right, and by authority of law,
and an executive commission. And each department of government
is bound to show that kind of deference and respect to the acts of the
others that are clothed with regular authority, although it may turn
out, upon future inquiry, that authority was improperly and unconsti-
tutionally exercised. The case at bar stands upon a like principle
and parity of reason. And if the acts of the officer in the case put,
would be good against third persons or the public, the proceedings of
the judge, in the present instance, cannot be absolute nullities. If
this is true as a general proposition, it must be especially so when ap-
plied to the peculiar facts of this case. Here the suitors submitted
themselves to the jurisdiction of the judge, and never caused any
statement to be made, by which it expressly appears that the inter-
change of riding took place under the regulations attempted to be
prescribed by the Legislature; nor was his authority in any manner
impeached or called in question. If any hardship or injustice were
about to be perpetrated, it was not only competent, but perfectly law-
ful, upon such suggestions, for the party to have proceeded in a pro-
per manner to have caused his legislative authority to have been set

aside. It is too late now to take advantage of this defect or omission; for if such indulgence was allowable, the constitution and the laws, instead of providing a shield for the protection of private right, might be converted into a weapon of offence against the peaceful and successful operations of the government. Such a state of things would never be permitted or allowed by a court of justice, entertaining proper respect for the other two departments of the government; especially by the judiciary department, of which this court is the last arbiter and expounder of the constitution and laws themselves, under which life, liberty, and property, are preserved, not only to be protected, but rendered inviolably secure.

Judgment affirmed.