THE PEOPLE, ex rel. HENRY C. ADAMS, Appellant, *v.* ZERAH S. WESTBROOK, Surrogate, etc., et al., Respondents.

A writ of prohibition is not demandable as matter of right, but of sound judicial discretion.

An order of the General Term of the Supreme Court, therefore, denying the writ is not reviewable here.

*It seems* that the writ should be issued only in cases of extreme necessity, and not for grievances which may be redressed by ordinary proceedings at law, or in equity, or by appeal.

The history of the writ in England stated, and the authorities collated.

(Submitted April 25, 1882; decided May 5, 1882.)

APPEAL from order of the General Term of the Supreme Court, in the third judicial department, made September 20, 1881, which affirmed an order of Special Term, denying an application on the part of the relator for a peremptory writ of prohibition.

The nature of the writ sought for and the material facts are stated in the opinion.

*H. C. Adams,* relator, in person. Irrespective of the pendency of the equity suit, the claims of the relator were purely of equitable cognizance, and involved the performance of a trust and the disposition of a trust fund, and therefore were subject-matters not embraced in nor referable under the statutes authorizing proofs or references of disputed claims. (*McNulty* v. *Hurd,* 72 N. Y. 520.) A writ of prohibition will issue where the subject-matter is not within the jurisdiction of the inferior tribunal. (3 Broom & Hadley's Com. 459; 20 N. Y. 531, 541–2; 4 Keyes, 136, 146–7; *McNulty* v. *Hurd,* 72 N. Y. 520.)

*J. E. Dewey* for respondents. In proceedings under the statute to sell real estate to pay debts of decedents, the surrogate has jurisdiction of disputed claims, and to hear and determine all claims of creditors, and distribute the fund arising from sales among the creditors establishing their claims before him.

(Code, §§ 2755, 2756, 2757, 2758, 2761, 2788 ; 2 R. S. [Edm. ed.] 105, 111, marg. pp. 102, 107, §§ 10, 42 ; *Hopkins* v. *Van Valkenburgh,* 16 Hun, 3, 5–7 ; 61 How. 137, 140–2; *Estate of Dolan,* 1 N. Y. Bull. 79 ; Opinion of Surr. of N. Y., Dayt. Surr. [3d ed.] 603, 619 ; *Magee* v. *Vedder,* 6 Barb. 357–8 ; Opinion of D. B. Ogden, Surr. of N. Y.; *Colson* v. *Brainard,* 1 Redf. 328–9 ; Redf., etc., Surrogates' Courts [Ed. of 1881], 611.)

Rapallo, J.     The relator has certain equitable claims against the estate of Peter G. Fox, deceased, upon which he brought an action against Fox in his life-time in the Supreme Court.     A decision was rendered in that action, in favor of the relator, and judgment was entered on such decision, but the judgment was set aside on the ground that Fox had died before the findings and conclusions of the trial judge were signed, and the action was ordered to proceed as if no decision or findings had been signed.     The relator, therefore, stands as plaintiff in an equitable action pending in the Supreme Court against Peter G. Fox, now deceased.

The surrogate of Montgomery county has ordered the real estate of Fox to be sold for the payment of his debts.     The sale has been made, and the proceeds are in the hands of the surrogate for distribution.

The surrogate has published the usual order requiring all persons having claims or demands against the estate of the deceased to exhibit and prove the same before him, and for distribution of the fund among the creditors.

The relator filed with the surrogate, papers showing that he had the equitable claims before mentioned, and that an action therefor was pending in the Supreme Court, and he insisted to the surrogate, and now claims, that the surrogate had no jurisdiction to compel him to submit his equitable claims to adjudication in the Surrogate's Court, and that they, being the subject of an action pending in the Supreme Court, could not be withdrawn from the jurisdiction of that court, and that the surrogate should be restrained from adjudicating upon his claim and from

distributing the fund, until the relator's claims shall have been adjudicated upon in his action pending in the Supreme Court. He also claims that the proceeds of sale of the real estate of Fox are impressed with a trust for the payment of the judgments before mentioned, in preference to the claims of other creditors.

For the purpose of enforcing these positions he instituted the present proceeding. He obtained an alternative writ of prohibition, directed to the surrogate and to the executor, prohibiting them from proceeding in the matter of proving, examining, deciding upon or intermeddling with the claims of the relator so pending and awaiting adjudication in the Supreme Court, and from making any adjudication in respect of the claims of other creditors of the estate inconsistent with or in any manner prejudicial to the rights and claims of the relator, until the final judgment of the Supreme Court in said action; and then only in accordance therewith. Also from making any distribution of the fund and from giving notice of such distribution until such final judgment, etc., and requiring the respondents to show cause at Special Term why said prohibition should not be made absolute, etc.

The alternative writ was granted upon affidavits in support of the allegations of the relator, and showing that the fund in the hands of the surrogate was insufficient to pay all the claims against the estate, including those of the relator. The respondents having made their return to the alternative writ, the application for a peremptory writ was heard at Special Term on the alternative writ and the return, and an order was made denying the application. That order was affirmed at General Term and the relator appeals to this court.

We do not deem it proper to pass now upon the claims to equitable relief set up by the relator and argued in the elaborate points which he has submitted, nor upon the question of the jurisdiction of the surrogate in the matter, for the reason that we are of opinion that the decision of the Supreme Court denying the writ of prohibition is not reviewable in this court. The writ of prohibition is an extraordinary remedy, and should

be issued only in cases of extreme necessity, and not for grievances which may be redressed by ordinary proceedings at law or in equity, or by appeal, and it is not demandable as matter of right, but of sound judicial discretion, to be granted or withheld, according to the circumstances of each particular case. (*Kinloch* v. *Harvey*, Harp. [S. Car.] 508.) This question was considered at an early day by the English courts, and was at one time a subject of controversy. In the reign of Charles the 2d, case of the *Lord Admiral* v. *Linsted* (Siderfin, 178 [15 Car. 2]), it was said by the chief justice that prohibitions were discretionary; but this was denied by KEELING, J., and his view prevailed during the time of that reporter. In *Serjeant Morton's Case* (Sid. 65 [13 Car. 2]), it is stated to have been the opinion of the whole court that prohibitions were grantable as matter of right, and did not rest in discretion as was said in Hob. 67, 66 b; and in *Woodward* v. *Bonithan* (T. Raym. 2), in the same reign (12 Car. 2) it was agreed that the granting of the writ was not discretionary, but that such writs were grantable *ex debito justitiæ*. It is worthy of note that all those cases arose during the judicial strife which was carried on in the sixteenth and seventeenth centuries between the Courts of King's Bench and the Courts of Admiralty, and they are all cases involved in that contest, the severity of which is described in Benedict's Admiralty, chap. 6, § 74 *et seq.*, where it is said that matters raged so high that a war was declared between the two courts, and prohibitions were hurled from Westminster Hall without much order. In 1648 the Republican Parliament of England, at the instance of the friends of trade and commerce, took sides with the Admiralty and adopted the ordinance of 1648 (Scobell's Collection, p. 147, chap. 112), entitled "The Jurisdiction of the Court of Admiralty Settled." Under this ordinance the Admiralty was administered by Dr. Godolphin until the restoration, in the year 1660, when it ceased to be in force, and the war of prohibition was resumed by the common-law judges. It was at this period that the decisions to which I have referred, holding the writ of prohibition to be matter of right and not of discretion,

were rendered by the King's Bench. But at a later day in 11 William the 3d, in the case of the *Bishop of St. David* v. *Lucy,* reported in 1 Ld. Raym. 539, a writ of prohibition was denied by the Court of King's Bench, and it appears by a note at page 545 that after this denial the bishop petitioned the lord chancellor for a writ of error upon this denial, and he, having some doubt, referred it to the attorney-general, who certified his opinion to be that a writ of error would lie. Thereupon the writ of error was granted, and the whole record brought by the chief justice (HOLT) into Parliament, and afterward, on hearing his opinion, the lords were of opinion that a writ of error would not lie in the case. This decision is also referred to in Salk. 136, and I find nothing later to the contrary.

In this State the principle of that decision has been adopted in the Supreme Court. *Ex parte Braudlacht* (2 Hill, 367), where COWEN, J., says: "We have a discretion to grant or deny the writ," referring to *State* v. *Hudnall* (2 Nott & McC. 419, 423), and the same view is expressed by elementary writers. (High on Extraordinary Remedies, § 765; 2 Crary's Spec. Proceedings, 87.)

It being discretionary with the Supreme Court whether to grant or deny the writ, its order refusing to grant it is not appealable to this court.

The appeal must be dismissed, with costs against the relator.

All concur, except MILLER and TRACY, JJ., absent.

Appeal dismissed.