[No. 1322.]

JOSEPHINE WALCOTT, Petitioner, *v.* THOMAS H. WELLS, ACTING PRESIDING JUDGE OF THE DISTRICT COURT OF THE STATE OF NEVADA IN AND FOR THE COUNTY OF WHITE PINE AND SAID DISTRICT COURT, Respondent.

Writ of Prohibition—Improperly Invoked.—A writ of prohibition will not issue to prevent an inferior court from trying an action once properly before it, but claimed to have been afterwards dismissed, as the question of dismissal was a proper one for the inferior court to decide; nor will the writ issue upon the claim that the action has been transferred to the circuit court of the United States, as that ·question is also a proper one for the inferior court to decide, subject to appeal, and for the further reason that the decision of this court would not be final should the United States court decide otherwise and remand the action to the state court for trial, and in either event error in the inferior court is only reviewable on appeal or by petition to the United States court.

District Judge—De Facto Officer.—By statute of 1885, p. 60, the state of Nevada was made one judicial district with but one judicial office in connection therewith, to-wit, the office of district judge, and three district judges, each having equal and co-extensive jurisdiction

and powers throughout the state to hold district court in any county and to exercise all duties pertaining to the office of district judge. The constitutionality of this statute was affirmed by the supreme court in *State ex rel. Coffin* v. *Atherton et als.* 19 Nev. 332. While this statute was in operation the legislature by statute of 1889, p. 122, increased the number of district judges to four, and directed the governor to immediately appoint an additional district judge to hold office until the next general election, when four district judges should be elected. Under the latter statute the governor appointed respondent district judge, who, at the time of the commencement of this proceeding, had held such office and exercised the functions thereof for more than a year with the acquiescence and recognition of the state, county officers and the people generally. *Held,* that irrespective of the question of the constitutionality of the statute of 1889, respondent is a *de facto* district judge and that his official acts are valid so far as the rights of third persons or the public are concerned. (Belknap, J., dissenting.)

PROPER REMEDY—QUO WARRANTO—PROHIBITION.—The question of the constitutionality of the statute increasing the number of district judges to four and the right of respondent to hold the office of district judge under that statute, can only be raised by a direct proceeding of *quo warranto* and is not properly before the court by a proceeding for a writ of prohibition. (Belknap, J., dissenting.)

ORIGINAL application for the writ of prohibition.

The facts sufficiently appear in the opinion.

*A. C. Ellis,* for Petitioner.

I. The action was dismissed. The plaintiff filed a proper precipe of dismissal with the clerk on February 7, 1890, and the clerk did not demand fees until February 9, 1890, and not then as a condition precedent to filing or entering the dismissal. As to the necessity of the prepayment of costs and the consequence of non-payment, see *Hancock Ditch Co.* v. *Bradford,* 13 Cal. 637; *Tregambo* v. *Comanche M. & M. Co.,* 57 Cal. 501. It is admitted that the defendants mailed a copy of the answer to plaintiff's attorney at Eureka, on the 6th day of February before it was filed, and that it was filed three days thereafter and that this is the only service ever made in the case. That this is no service is no longer an open question. (*Lyon Co.* v. *Washoe Co.,* 8 Nev. 177; *Johnson* v. *Badger M. & M. Co.,* 12 Nev. 261; *Reese G. & S. M. Co.* v. *Rye Patch M. Co.,* 15 Nev. 341.)

II. If not dismissed, the suit was transferred to the U. S. circuit court by filing the petition and bond in the court below on the 2d day of March, 1890. When the jurisdiction is in

another court, then the one threatening to try the case should be prohibited by the writ of prohibition. (*Sheehy* v. *Holmes, Superior Court*, 55 Cal. 486; *Ex-parte Williams*, 4 Ark. (Pike,) 537; 8 S. E. Rep. 488; 4 S. E. Rep. 782; 3 Southern Rep. 380; 12 Am. Dec. 596; High Ex. Legal Rem. Par. 775.)

III. The law of 1889 is unconstitutional and void as shown by oral argument in this case. Being void, the fourth judge, as such, may be prohibited by the writ of prohibition from proceeding to exercise judicial powers and functions in any given case when the writ is invoked. (*Ex-parte Roundtree*, 51 Ala. 51; High Ex. Legal Rem. Sec. 775; *State* v. *Com. of Roads*, 12 Am. Dec. 604; *Kirby* v. *Superior Court*, 68 Cal. 604.) When a law is unconstitutional under which a person claims to exercise authority, such authority may be attacked and disregarded in any form of proceeding.

*Wren & Cheney* and *Henry Rives*, for Respondent.

I. The object and purpose of a writ of prohibition is to enable superior courts to confine inferior judicial tribunals within the limits of their rightful jurisdiction. (Note to 12 Am. Dec. 604, 607; *Smith* v. *Whitney*, 11 U. S. 176; *Thompson* v. *Tracey*, 60 N. Y. 31; *Ex-parte Brablacht*, 2 Hill, 367.)

II. If the inferior tribunal has jurisdiction of the subject matter and parties to the action, any action therein, however irregular or erroneous, does not authorize the issuance of the writ of prohibition. The party aggrieved has a plain, adequate and speedy remedy at law, by appeal, writ of error, etc., and must pursue that remedy. (High Ex. Legal Rem. Secs. 767, 770, 771 and 772; Note to 12 Am. Dec. 608; *Low* v. *Crown Point Mg. Co.*, 2 Nev. 75; *Ex-parte Gordon*, 104 U. S. 515; *Ex-parte Ferry Co.*, 104 U. S. 519; *Ex-parte Pennsylvania*, 109 U. S. 174; *Smith* v. *Whitney*, 116 U. S. 176.)

III. Title to office can not be tried by a writ of prohibition. That question can only be determined in a direct proceeding brought for that purpose, upon information in the nature of *quo warranto*, or an action for usurpation of office under the statute. (High Ex. Legal Rem. Sec. 49; *Buckner* v. *Veuve*, 63 Cal. 304; *Hull* v. *Superior Court*, 63 Cal. 174; *People* v. *Sassovich*, 29 Cal. 480; *Satterlee* v. *San Fran.*, 23 Cal. 314; *People* v. *Scannell*, 7 Cal. 438; *People ex rel. Smith* v. *Olds*, 3

Cal. 167; *People* v. *Stevens,* 5 Hill 616; *Ex-parte Daugherty,* 6 Ired. 155; *Fitch* v. *McDiarmid,* 26 Ark. 482.) The question must first be presented in the lower court. (Note to 12 Am. Dec. 609; High Ex. Legal Rem. Sec. 7*5.) Proceedings to determine the title to office must be prosecuted in the name of the people of the state. (*Fraser* v. *Frelon,* 53 Cal. 644; Gen. Stats. of Nev. Secs. 3342, 3711.)

IV. Respondent still has jurisdiction of the case. The attempt to dismiss the action did not divest the district court of jurisdiction. (*Page* v. *Page,* 77 Cal. 83; *Page* v. *Superior Court,* 76 Cal. 372.) The filing of the answer, whether served or not, prevented the clerk from dismissing the action, and gave the court jurisdiction to determine its sufficiency. (*Maples* v. *Geller,* 1 Nev. 233; *Ah Goon* v. *Superior Court,* 61 Cal. 555.) The filing of the petition and bond for removal did not oust the court of jurisdiction so that its subsequent proceedings in the action can be arrested by prohibition. (*Ches. & O. R. R. Co.* v. *White,* 111 U. S. 134; *Ex-parte Mobile & O. R. R. Co.,* 63 Ala. 349.) Notwithstanding the filing of the petition and bond for removal of the cause it still remained for the district judge to determine from the proceedings, petition and record of the case up to the time when the petition was filed, whether or not the case was removable. (*Burlington R. R. Co.* v. *Dunn,* 122 U. S. 513; *Stone* v. *South Carolina,* 117 U. S. 430.) The district court did not err in denying the motion to remove. The plaintiff must abide by the decision of the tribunal which she voluntarily sought in the first instance. (*Wedekind* v. *Southern Pacific Co.,* 13 Saw. 139.)

By the Court, HAWLEY, C. J.:

This is an application by the petitioner for a writ of prohibition to prevent the trial of the case of *Walcott* v. *Watson et al.* in the district court of White Pine county.

1. Petitioner claims that the court has no jurisdiction to try the case (1) because it has been dismissed; (2) that if not dismissed, it has been transferred to the circuit court of the United States.

The writ of prohibition is an extraordinary remedy, and should be issued only in cases of extreme necessity. Before it should issue, it must appear that the petitioner has applied to

the inferior tribunal for relief.   The object of the writ is to re-strain inferior courts from acting without authority of law in cases where wrong, damage and injustice are likely to follow from such action. It does not lie for grievances which may be redressed in the ordinary course of judicial proceedings, by appeal.   It is not a writ of right, but one of sound judicial discretion, to be issued or refused according to the facts and circumstances of each particular case.   Like all other prerogative writs, it is to be used with caution and forbearance, for the furtherance of justice, and securing order and regularity in judicial proceed-ings in cases where none of the ordinary remedies provided by law are applicable.   The writ should not be granted except in cases of a usurpation or abuse of power, and not then, unless the other remedies provided by law are inadequate to afford full relief.   If the inferior court has jurisdiction of the subject-matter of the controversy and only errs in the exercise of its jurisdiction, this will not justify a resort to the extraordinary remedy by prohibition.

The district court has unquestioned jurisdiction of the sub-ject-matter of the action of *Walcott* v. *Watson et al.*   Petitioner, after submitting her cause to the jurisdiction of that court, sought to dismiss the action.  A controversy arose as to whether or not the action was dismissed before the filing of defendant's answer setting up a counter-claim.   This was a question for the district court to decide.   It may have erred in deciding it ad-versely to petitioner; but if it did, the petitioner would have redress by an appeal to this court, if the final judgment should be rendered against her.   The same principle applies to the second ground relied upon.   It was within the jurisdiction of the court to determine whether or not the case had been trans-ferred.   If the court erred in its ruling upon this question, petitioner could have redress in the same manner, by appeal, or she might apply by petition to the circuit court of the United States to have the case transferred—a proceeding involving but little, if any, greater expense or delay than will be incurred by this application.   Moreover, that question ought not to be raised by this extraordinary remedy in this court.   The de-cision thereon would not be final.   If it was considered and decided by this court that the cause was transferred, the circuit court might, when it came up in that court, decide otherwise, and send it back to the state court for trial.   It is a principle

which lies at the very foundation of the law of prohibition that the jurisdiction is strictly confined to cases where no other remedy exists; and it has always been held to be a sufficient reason to refuse to issue the writ where it clearly appears that the petitioner therefor has another plain, speedy and adequate remedy at law.

In *Martin* v. *Sloan*, after a temporary injunction was dissolved in an action brought by an administrator, the defendant therein moved for an assessment of damages on the injunction bond. During the proceedings a new administrator was substituted. One of the sureties on the injunction bond instituted this proceeding, and applied for a writ of prohibition to prevent the court from proceeding any further upon the motion for damages, on the ground that the original suit had abated, and the jurisdiction of the court terminated. The court said: "This is plainly no case for the issuance of a writ of prohibition. Should the trial court enter a finding and judgment for damages against petitioner and the other sureties on the injunction bond, any one of them aggrieved may review that result by appeal or writ of error, on taking proper steps to that end. Any error that the court may make in determining the proper limits of its jurisdiction in the premises can be effectively corrected by any of the usual modes of reviewing judgments. The writ of prohibition should issue only in circumstances where the ordinary remedies are inadequate to the ends of justice. Where, as here, an appeal or writ of error furnishes a complete and effective remedy for an error of the court below prejudicial to the rights of a party, this extraordinary remedy should be denied." (11 S. W. Rep. 558; see, also: *People ex rel. Loveland* v. *District Court*, 11 Colo. 574; *Buskirk* v. *Judge Circuit Court*, 7 W. Va. 91; *Fleming* v. *Commissioners*, 31 W. Va. 619; *Supervisors* v. *Wingfield*, 27 Grat. 333; *State ex rel. Patten* v. *Houston, Judge,* 40 La. Ann. 393; *State ex rel. Mayer* v. *Rightor, Judge,* 40 La. Ann. 839; *Wilson* v. *Berkstresser*, 45 Mo. 283; *People ex rel. Adams* v. *Westbrook,* 89 N. Y. 152; *Turner* v. *Mayor,* 78 Ga. 687; *People* v. *Wayne Circuit Court,* 11 Mich. 403; *People ex rel. Marks* v. *Hills,* 16 Pac. Rep. 405; *Powelson* v. *Lockwood,* 82 Cal. 615; *High, Extr. Rem.* Sec. 765 *et seq.*)

2. Petitioner next contends that the writ should be issued to prohibit respondent, Wells, from acting as judge upon the trial of said cause, upon the ground that he is not one of the

district judges authorized to try cases in the district court of
the state of Nevada; that he is acting as a judge without any
authority of law; that he has in defiance of law and without
any jurisdiction, " usurped the authority and power to try said
cause, in that the law under which he was appointed and com-
missioned by the governor is wholly void, and of no effect.'
On the other hand, it is claimed that the right of respondent, ·
Wells, to exercise and perform the functions of a district judge,
and his title to the office of district judge, cannot be raised,
tried or determined in this proceeding; that the constitution-
ality of the act of the legislature under which he was appointed
to the office is not involved, and cannot be attacked,
and should not be considered or decided herein; that the
validity of the act, in so far as it involves respondent's title to the
office, can only be considered and determined in proceedings in
the nature of quo warranto instituted, as provided by statute, for
the purpose of determining his right to hold said office; that until
such a proceeding is instituted, and until it is decided therein that
he has no right or title to the office, he is, as to third persons
and the public, at least a de facto officer; and that all his acts as
such are valid and binding, and that there is no valid reason why
he should not be permitted to try petitioner's case, as well as
the cases of other litigants pending in the court over which he
presides.    Which contention is correct ?    First, let us consider
the facts upon which the respective claims are based.

The act supplemental to and amendatory of an act entitled
" An act to redistrict the state," etc., approved March 4, 1885,
was approved March 12, 1889; and section 1 of said act reads
as follows:   " The number of district judges in the judicial
district of the state of Nevada shall, from and after the passage
of this act, be four; and the governor of said state shall
immediately upon the passage of this act, appoint a district
judge from said judicial district to hold such office under such
appointment until the next general election, when four district
judges from said judicial district shall be elected."   (Stat. 1889,
122.)   There was, at the time of the passage of this act, a dis-
trict court legally constituted, constitutionally organized and
existing by virtue of law, to be held in every county of the
state.   The office of district judge also legally existed.   There
was but one judicial district for the entire state, but one district
court, and one judicial office in connection therewith to be

filled, to-wit.: the office of district judge of the district court of the state of Nevada. This office was then filled by three district judges, each having equal and co-extensive and concurrent jurisdiction and power throughout the state to hold the district court in any county, and to exercise and perform the powers, duties, and functions of the court, and all other duties pertaining to the office of district judge. These judges were authorized to elect a presiding judge, who had, among other things, the power to direct the district judges to hold court in the several counties as the public business might require. (Stat. 1885, 60; *State ex rel. Coffin* v. *Atherton*, 19 Nev. 332.)

The legislature, in 1889, deeming it to be necessary for the proper and speedy transaction of judicial business in the district court, and believing that they were authorized to increase the number of district judges, passed the act in question, authorizing the governor to appoint another judge. This act did not create any new court or new officer. It simply provided for an increase of judges. There were to be more officers—an additional district judge to preside in the district court, and perform the functions and exercise the powers of a district judge throughout the state. The governor, pursuant to the provisions of the supplemental act, appointed and commissioned the respondent as a district judge. There was no first, second, third, or fourth judge. But there were four district judges, each commissioned to fill the one office of district judge; each apparently at least, authorized to hold court, not in any particular county, but in each and every county in the state. We are bound to take judicial notice of the fact that, after respondent was commissioned and sworn into office, he was assigned by the presiding judge of the judicial district to hold the district court in the county of White Pine, and certain other counties; that immediately thereafter he commenced to discharge the duties pertaining to the office of district judge; and that for more than a year past he has been recognized by the state and county officers, and by the people of this state, as one of the district judges, and that his right to perform the duties of the office of district judge, and receive the salary pertaining thereto, has never been questioned until this proceeding was instituted. It is a general rule, of universal application, that the acts of an officer *de facto* are valid and binding as to third persons and the public, and cannot be questioned except in a

direct proceeding instituted for that purpose by *quo warranto.*

In *Coyle* v. *Commonwealth,* the defendant, on trial for murder, contended that the judge was acting under an unconstitutional law, and that he had no jurisdiction to try the case. The supreme court said: ."The question sought to be raised by the prisoner's special plea to the jurisdiction is not properly before us. The rightful authority of a judge, in the full exercise of his public judicial functions, cannot be questioned by any merely private suitor, nor by any other, excepting in the form especially provided by law. A judge *de facto* assumes the exercise of a part of the prerogative of sovereignty, and the legality of that assumption is open to the attack of the sovereign power alone. If the question may be raised by one private suitor, it may be raised by all; and the administration of justice would, under such circumstances, prove a failure. It is not denied that Judge McLean was a judge *de facto,* and if so he is a judge *de jure* as to all parties except the commonwealth. The attorney general, representing the sovereignty of the state, by a writ of *quo warranto,* might properly present this constitutional question for our consideration, but it cannot come before us from any other source, or in any other form." (104 Pa. St. 130; see, also, to same effect, *Clark* v. *Commonwealth,* 29 Pa. St. 129; *Commonwealth* v. *McCombs,* 56 Pa. St. 436; *People* v. *Sassovich,* 29 Cal. 485; *Buckner* v. *Veuve,* 63 Cal. 304; *Carleton* v. *People,* 10 Mich. 251; *People* v. *White,* 24 Wend. 524; *Fowler* v. *Bebee,* 9 Mass. 231; *Sheehan's Case,* 122 Mass. 445; *Commonwealth* v. *Taber,* 123 Mass. 253; *In re Boyle,* 9 Wis. 264; *State* v. *Bloom,* 17 Wis. 521; *Ex-parte Johnson,* 15 Neb. 512; *Trumbo* v. *People,* 75 Ill. 565; *State* v. *Meehan,* 45 N. J. Law, 192; *State* v. *Vickers,* 51 N. J. Law, 180; *Keith* v. *State,* 49 Ark. 442; *State* v. *Fuller,* 96 Mo. 167; *In re Cleveland,* Mayor, 17 Atl. Rep. 772; *Jewell* v. *Gilbert,* 64 N. H. 14; *Baker* v. *State,* 69 Wis. 37; *Hull* v. *Superior Court,* 63 Cal. 177.)

But petitioner contends that respondent is not a *de facto* officer, that the conditions necessary to constitute such an officer do not exist, that there is no office to be filled, that it is a legal impossibility for a fourth judge to fill the office of district judge, " because the office has always been full," and that for these reasons the rule above stated has no application to this case. We admit that there can be no officer, either *de jure* or *de facto,* if there be no office to fill; that an office attempted to be created

by an unconstitutional law has no legal existence, is without any validity, and that any person attempting to fill such a pretended office, whether by appointment or otherwise, is a usurper, whose acts would be absolutely null and void, and could be questioned by any private suitor, in any kind of an action or proceeding. It would be a misnomer of terms to call a person an "officer" who holds no office. A public office can not exist without authority of law. An office can not be created by an unconstitutional act, for such an act is no law. It confers no rights, imposes no duties, affords no protection, furnishes no shield, and gives no authority. It is in legal contemplation to be regarded as never having been possessed of any legal force or effect, and is always to be treated as though it never existed. (*State ex rel. Stevenson* v. *Tufly*, 20 Nev. 428; *Norton* v. *Shelby Co.*, 118 U. S. 442.) If, therefore, the contention of counsel for petitioner has any solid foundation for its support, the conclusions to be drawn therefrom should be sustained. But, if the contention is wholly unsupported and unwarranted by the facts, then the entire fabric upon which the claim is made must fall; it having nothing to support it.

The case of *Ex-parte Roundtree* 51 Ala. 40, wherein a writ of prohibition was issued to a circuit judge to prohibit him from proceeding in a case, is relied upon by petitioner's counsel to sustain his position. That case, however, is wholly different in its facts, and is plainly distinguishable from this. There the legislature of Alabama passed an act, by its terms creating a new court, to be known as the "law and equity court of Morgan county," and provided " that the judge of the fourth judicial circuit of Alabama shall be the judge of said court of law and equity." This act was held to be unconstitutional because it took from the qualified electors of Morgan county the power of electing a judge. The court attempted to be created by an unconstitutional law, had no legal existence. Here the district court in which respondent is presiding had a legal existence prior to and at the time of his appointment, and was not created by virtue of the act authorizing his appointment. We refer to two other decisions, similar to the Alabama case, for the purpose of illustrating the particular character of cases to which the argument of petitioner's counsel would apply, and to show the distinction in the facts between such cases and the one under consideration.

The legislature of Kentucky attempted, in an unconstitutional manner, to abolish the constitutional court of appeals, and to create a new court of appeals, in direct violation of the plain provisions of the constitution of the state.    The constitutional court of appeals, in *Hildreth's Heirs* v. *McIntire's Devisee,* 1 J. J. Marshall 206, held that there could be but one court of appeals, and that such a thing as a *de facto* court of appeals could not exist under the constitution, and as no such court existed the gentlemen appointed to preside over such a court were not *de facto* officers.    In *Norton* v. *Shelby Co.,* 118 U. S. 426, on writ of error from the supreme court of Tennessee to the supreme court of the United States, the legislature had attempted, by an unconstitutional act, to abolish what was known as the "Quarterly Court," composed of the justices of the peace of Shelby county, and to create in its stead a board of commissioners consisting of three members, it was held that, as this board of commissioners never had a lawful existence the members thereof were not *de facto* officers, and that all the acts of the pretended board were null and void.    The distinction in the facts between the cases referred to and the present one is so clear, plain and manifest, that no one ought to be misled in applying the legal principles which control the respective class of cases. In each of the cases referred to, no court or office known to the law existed, to be filled by any one.    Here the court and the office existed by virtue of the constitution and a valid law. There the right of the pretended officers to perform the functions of the pretended office was not admitted by any one, but, on the contrary, was directly disputed and drawn in question when the respective persons attempted to act.    In *Norton* v. *Shelby Co.* the members of the quarterly court not only denied the right of the supervisors to act, but instituted proceedings by *quo warranto* to remove them from office; and such proceedings were pending in the courts at the time the acts under review in that case were performed.    Here the right of respondent to act as district judge was never disputed, and his authority to act was publicly recognized and acquiesced in..

What constitutes a *de facto* officer ?    This court in *Mallett* v. *Uncle Sam G. & S. M. Co.,* 1 Nev. 197, said that an officer *de facto* is on the one hand distinguished from a mere usurper of the office, and on the other hand from an officer *de jure.*    In *Meagher* v. *Storey Co.,* 5 Nev. 245, it was said that acts per-

formed by a city recorder as a committing magistrate, though
the statute authorizing him to so act is unconstitutional and
void, are to be regarded as the acts of a *de facto* officer, and valid
as to third persons and the public. In *State ex rel Corey* v. *Curtis*,
9 Nev. 338, we had occasion to examine and discuss, to a limited
extent, the question as to what constitutes an officer *de facto*.
The rules taken from the authorities were there announced as
follows:  (1) One who has the reputation of being the officer he
assumes to be, and yet is not a good officer in point of law.
(2) One who actually performs the duties of an office, with
apparent right, and under claim and color of an appointment
or election.  (3) One who has the color of right or title to the
office he exercises.  (4) One who has the apparent title of an
officer *de jure*.

In *State* v. *Carroll*, Chief Justice Butler gave the follow-
ing complete definition of a *de facto* officer:  " An officer *de
facto* is one whose acts, though not those of a lawful officer,
the law, upon principles of policy and justice, will hold
valid so far as they involve the interests of the public and third
persons, where the duties of the office were exercised: *First*.
Without a known appointment or election, but under such cir-
cumstances of reputation or acquiescence as were calculated to
induce people, without inquiry, to submit to or invoke his
action, supposing him to be the officer he assumed to be.
*Second*. Under color of a known and valid appointment or
election, but where the officer had failed to conform to some
precedent requirement or condition, as to take an oath, give
a bond, or the like.  *Third*. Under color of a known election
or appointment, void because the officer was not eligible, or
because there was a want of power in the electing or appoint-
ing body, or by reason of some defect or irregularity in its
exercise; such ineligibility, want of power, or defect being
unknown to the public.  *Fourth*. Under color of an election or
appointment by or pursuant to a public unconstitutional law,
before the same is adjudged to be such." (38 Conn. 471.)
This definition has been accepted, approved, and followed, in
its entirety, in all the numerous subsequent cases where the
question has been discussed, and was referred to with appro-
bation by this court in *State ex rel Harris* v. *Blossom*, 19
Nev. 317.

In *Taylor* v. *Skrine*, decided in 1815, it was sought to set aside

a decree on the ground that it was made by a person who was not constitutionally qualified to preside as judge. There was an act in South Carolina authorizing the governor to appoint and commission some fit and proper person to sit as judge in case any of the judges on the circuit should happen to be sick or unable to hold the court in his circuit. The judge who made the decree was appointed pursuant to the provisions of that act. After the rendition of the decree the act was declared void by a decision of the supreme court. The question was whether all the acts of the judge so appointed were necessarily void. The court, in answering this question, said : " The judge in this case acted under color of legal authority. He had a commission under the seal of the state, signed by the governor, and authorized by an act of the legislature. * * * The public acts of officers *de facto* are often valid although the authority under which they act is void. Public convenience as well as public justice, requires that they should be supported. It would lead to incalculable mischief if all the proceedings under the several judges who have been thus appointed should be declared null and void." (3 Brev. 516.)

The cases of *State* v. *Carroll, supra,* and *Ex-parte Strang,* 21 Ohio Stat. 610, are similar in their facts to that of *Taylor* v. *Skrine;* the difference being only that in the South Carolina case the law authorizing the appointment of a temporary judge had been declared unconstitutional before the decision in *Taylor* v. *Skrine* was rendered, and in the other cases the court declined to pass upon the constitutional question, holding it to be unnecessary so to do, as the temporary presiding judge was at least a *de facto* officer, and that his acts were valid and binding as to the public and third persons. We are of opinion that the facts of the present case bring respondent clearly within the definition of a *de facto* officer, as given in *State ex rel. Corey* v. *Curtis* and *State* v. *Carroll,* even if the act authorizing his appointment is unconstitutional, and that the case comes clearly within the principle of law as stated in the three cases above quoted from or referred to. In those cases the office was full. There was no vacancy. The law authorizing the appointment of a temporary judge had either been declared unconstitutional, or, for the purpose of the decisions, admitted to be unconstitutional. The temporary judge acted in the place of the judge *de jure,* under color of authority derived from an un-

constitutional statute by virtue of his commission, etc. Here respondent did not take the place of either of the three other judges, for there was no separate place for either to fill, except by the assignment of the presiding judge. He was acting by virtue of his commission, in his own right by the consent of the other judges, and was assigned to the place by the presiding judge, and was the only judge presiding in the district court of the state in and for the county of White Pine. He acted as a district judge, filled the office, and presided in court, under as much color of authority as either of the temporary judges in the cases referred to. Why should not the same shield of protection to the public be given to his acts?

"The doctrine which gives validity to acts of officers *de facto,* whatever defects there may be in the legality of their appointment or election, is founded upon considerations of policy and necessity, for the protection of the public and individuals whose interests may be effected thereby. Offices are created for the benefit of the public, and private parties are not permitted to inquire into the title of persons clothed with the evidence of such offices, and in apparent possession of their powers and functions. For the good order and peace of society, their authority is to be respected and obeyed until, in some regular mode prescribed by law, their title is investigated and determined. It is manifest that endless confusion would result if in every proceeding before such officers, their title could be called in question." *Norton* v. *Shelby Co.*, 118 U. S. 441.

In *Leach* v. *People ex rel. Patterson*, 122 Ill. 420, the legislature having passed an act in violation of the constitution of the state of Illinois, taking the management of county affairs under township organizations from the supervisors of the several towns, consisting of fifteen members, and vesting the same in a board of supervisors consisting of only five members, it was contended, as it is contended here, that there was no *de jure* office for the supervisors to fill; and *Norton* v. *Shelby County,* was relied upon to sustain this position. Chief Justice Sheldon, speaking for a majority of the members of the supreme court, in answer to this contention said: "Whatever township organization prevails, there is in every county a board of supervisors for the transaction of the affairs of the county. The act in question merely changed the number of the members of the board from fifteen to five, and the mode of election from towns

singly to two or more unitedly, and the term of office.  Noth-
ing was added to or taken from the powers or duties of the
board.   After the passage of the act there still remained the
board of supervisors of Wayne county, the official body for the
management of the county's affairs, and the persons elected as
members under the act went on, under the sanction of the
statute, and exercised the powers and duties of the board
of supervisors of Wayne county without question.   There
was no rival board, but it was the sole acting board of
supervisors in Wayne county."   There was all the while the
legally established office or official body of the board of super-
visors.   It appeared in that case that the new members of the
board were elected in pursuance of the act, and entered upon
the duties of their office, and went on and exercised the powers
and duties of the board of supervisors of Wayne county for
years, without question of their right to do so.   They had the
sole management and transaction of the affairs of the county,
and did all the official legislative business of the county (just
as respondent, Wells, had the sole management of the affairs
of the district court in White Pine county, and did all the
judicial business of the county that was done).   There was no
other official body ready and willing to do it.   Upon this state
of facts, the court said:  "They were recognized and acqui-
esced in by all the public as the board of supervisors of Wayne
county; and to hold their acts to be invalid would be most dis-
astrous to the public interest, and that of individuals who
were justified in relying upon their acts as the acts of the board
of supervisors of the county.   There are present here all the
elements which, from considerations of public policy, and for
the avoiding of public inconvenience, have been recognized as
going to make up the character of *de facto* officers, whose acts
should be held valid as officers by virtue of an election as such,
under an act of the legislature; reputation of being public offi-
cers, and public belief of their being such; public recognition
thereof, and public acquiescence therein; and action as such
unquestioned, during a series of years, with no other body
ready and willing to act as the board of supervisors.   We are
therefore of opinion that this act  *  *  *   in relation to the
board of supervisors of Wayne county, even if it be unconstitu-
tional, was sufficient to give color of title that the official board,
elected and acting under the law, were officers *de facto*, and

that their acts should be held valid, so far as the public and
third persons are concerned."

In *State ex rel. Derusha* v. *McMartin*, 43 N. W. Rep. 572,
there was an act of the legislature establishing a justice's court
in one of the wards of the city of St. Paul, and providing for
the election of such justice at the next general city election.
There was a section of the act authorizing the mayor of the
city to appoint the first justice to hold the office until the next
election. Respondent, McMartin, was occupying the office,
and performing its duties, under appointment by the mayor,
pursuant to the provisions of this act. A civil action was com-
menced in the court, and the defendant therein applied for a
writ of prohibition to restrain McMartin from proceeding in
the action, on the ground that he was not a justice of the peace,
and had no authority to act as such, for the reason that the
provision of the act assuming to confer the power on the mayor
to fill the office by appointment is unconstitutional. The court
said: "This part of the act is entirely separate and distinct
from the provisions creating the court or office; and hence, even
assuming that the former is invalid, the latter are valid. We
have, then, a case where the court or office was legally created;
and the illegality, if any, consists in an attempt to fill it by ap-
pointment for the period indicated in a way not authorized by
the constitution. On these facts, according to all the authori-
ties, the respondent is a justice *de facto*. That his title to the
office cannot be tried on a writ of prohibition, but only on in-
formation in the nature of *quo warranto*, is too well settled to
require discussion." Counsel in that case, as well as in the
case under consideration, argued that petitioner had no other
available remedy for the wrong and injustice that was about to
be done him, and that, inasmuch as there must be a remedy for
every wrong, therefore a writ of prohibition ought to be issued.
But, said the court: "The fallacy consists in the assumption
that relator is threatened with any wrong. Respondent being
a justice *de facto*, his acts are as valid as if he was a justice *de
jure*. In fact, as to everybody except the state, in proceedings
by *quo warranto* to test his right to the office, he is, in effect, a
justice *de jure*."

In support of the views we have expressed we cite the follow-
ing additional authorities, (*Rives* v. *Pettit*, 4 Ark. 582; *In re
Ah Lee*, 6 Sawy. 410; *Campbell* v. *Commonwealth*, 96 Pa. St. 347;

*Brown* v. *Lunt*, 37 Me. 429; *Dugan* v. *Farrier*, 47 N. J. Law, 385; *Carli* v. *Rhener*, 27 Minn. 293; *In re Parks*, 3 Mont. 431; *Fitchburg Railroad Co.* v. *Grand Junction Railroad and Depot Co.*, 1 Allen. 557; *Petersilea* v. *Stone*, 119 Mass. 467; *Clark* v. *Easton*, 146 Mass. 45; *People, ex rel Norfleet* v. *Staton*, 73 N. C. 546; *Hamlin* v. *Kassafer*, 15 Or. 458.)

The contention of petitioner's counsel " that, when a law is unconstitutional under which a person claims to exercise authority, that such authority may be attacked and disregarded in any form of proceedings," is not sustained by reason or authority. The legal existence of the district court of the state of Nevada, and of the office of district judge of said court, cannot be questioned. Neither the court nor the office was created by the act which is claimed to be unconstitutional. The question raised in this proceeding is not, therefore, one touching the jurisdiction of the court; but it is an inquiry into the right of a particular person to hold the office of district judge, which is a question absolutely distinct from that of the jurisdiction of the court. The only question that is before us for consideration, is whether or not the reputed or colorable authority required by law to constitute an officer *de facto* can be derived from an unconstitutional statute.

From a review of the authorities bearing directly on the question, it clearly appears that it is sufficient if the officer claims and holds the office under some power having color to appoint, and that a statute, though it should be found repugnant to the constitution, will give such color.

The question of the constitutionality of the act increasing the number of district judges to four will not be considered. It is not properly before us for decision. It was not discussed by counsel for respondent, and is simply assumed to be unconstitutional by petitioner's counsel. This question, in so far as respondent's right to hold the office of district judge is concerned, can only be raised in a direct proceeding, by *quo warranto*, to determine by what authority he exercises the right.

The alternative writ of prohibition heretofore issued in this case is vacated, and the temporary writ asked for denied.

MURPHY, J., concurring:

I was not present, and did not hear the oral arguments made by the attorneys on the hearing for the writ. But from an ex-

amination of the briefs filed, and all the authorities having any bearing upon the subject, I am of the opinion that the application for the writ should be denied.

I therefore concur in the opinion of Chief Justice Hawley.

BELKNAP, J., dissenting:

At the session of 1885 the legislature constituted the state one judicial district, and provided that there should be three judges of the district court. Pursuant to this law, three judges were elected at the general election of 1886 for the term of four years. Their terms will not expire by limitation until the first Monday in January, 1891. At the session of 1889 the legislature enacted that the number of district judges should be increased to four, and authorized the governor of the state to forthwith appoint a fourth judge. Respondent was commissioned under this authority in the month of March, 1889. This enactment, in so far as it attempts to increase the number of district judges during the term of the judges elected in 1886, is in direct violation of the provisions of the constitution, which require that the number shall not be increased or diminished "except in case of a vacancy, or upon the expiration of the term of an incumbent of the office." (Const. Art. 6, Sec. 5.) The enactment, being unconstitutional and void in the respect stated, created no office or judgeship to be filled. It was as inoperative as though it had never been passed. No *de jure* judge could be created by virtue of its provisions; and, if there could be no *de jure* judge, there could be no *de facto* judge, for the reason that the *de facto* doctrine pre-supposes provision by law for a *de jure* officer. It is considered, however, by the majority of the court, that if the law of 1889 be unconstitutional, the office of district judge created by the constitution and laws passed in pursuance thereof remains; that respondent is an incumbent of this office, and therefore a *de facto* officer. In my view the case does not admit of the application of the *de facto* doctrine.

At the time of respondent's appointment the office of district judge was, and continuously since has been, filled by the three judges before mentioned. A *de facto* officer, as the term implies, is one who is, in fact, the officer. It is evident that there is no room for such an officer if the number of officers fixed by the law are in the actual possession of the office. (*McCahon* v.

*Commissioners*, 8 Kan. 437; *Boardman* v. *Halliday*, 10 Paige, 232; *Morgan* v. *Quackenbush*, 22 Barb. 80; *Cohn* v. *Beal*, 61 Miss. 399; *State* v. *Blossom*, 19 Nev. 312.)

The cases cited by the chief justice fall short, it seems to me, of estabishing the conclusion that respondent is a *de facto* officer. In *State* v. *Carroll*, *Taylor* v. *Skrine* and *ex-parte Strang*, the legal incumbant was temporarily incapable of discharging the duties of the office, and had surrendered it and its instrumentalities to the possession of the appointee. There was, therefore, in each of these cases, a vancacy, or that which was tantamount to one. In *State, ex rel Derusha* v. *McMartin*, 43 N. W. Rep. 572, the office was vacant when the appointment was made. In *Leach* v. *People*, 122 Ill. 420, the legislature had passed an unconstitutional act, providing for the election of a board of supervisors for the management of the affairs of Wayne county, consisting of five members only, instead of fifteen. "The real cause of complaint," said the court in its opinion, "is that the office legally existing was illegally filled." The question in all of these cases was whether an officer appointed or elected under an unconstitutional act to a vacant office was a *de facto* officer. This question is not involved in the present case, because there was no vacancy in the legal organization of the court to be filled.

I think respondent should not be considered a judge *de facto*, and that the writ of prohibition should issue.