## T. S. MORTON, *as Administrator, &c., et al.*, v. JOHN R. LEE.

OFFICER DE FACTO; *Acts, How far Valid.* · Where a person is duly appointed by the governor of the state a justice of the peace, and thereafter qualifies and enters upon the discharge of the duties of the office, and is placed in full possession of the books, papers and docket pertaining to the office, and after the expiration of his term under his appointment continues to hold over, and refuses upon the demand of his successor in office to deliver up the books, papers and dockets of the office, and has full charge and control of the same, and continues to discharge the duties of the office, and is generally recognized by a large portion of the people of the township where he holds his office as such officer, *held*, that he is a justice of the peace *de facto*, and his acts as justice of the peace, though not those of a lawful officer, are valid so far as they involve the interest of the public and third persons.

### *Error from Barton District Court.*

ACTION brought by *Lee* against *Morton*, as administrator of the estate of T. C. Tinnon, deceased, and the sheriff of that county, to enjoin the collection of a certain judgment. July 28, 1881, judgment was given for the plaintiff, granting the perpetual injunction prayed for. The defendants bring the case here. The opinion states the facts.

*G. W. Nimocks*, for plaintiffs in error.

*Cole Bros.*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: At the general term of this court for 1880, proceedings in *quo warranto* were brought, to determine by what authority A. J. Buckland attempted to hold the office of justice of the peace of Great Bend township, in Barton county. It was therein decided that Buckland was not entitled to the office, and judgment of *ouster* was rendered against him. (*The State v. Buckland*, 23 Kas. 259.) Prior to this decision, and while Buckland had full charge of and control of the books, papers and docket pertaining to the office, defendant in error (plaintiff below), on June 28, 1879, appeared before him as justice of the peace of Great Bend township, in said Barton county, and voluntarily confessed judgment on a promissory note in favor of plaintiff in error (defendant below) for $176.55, and $4.80 costs. On August 10th, following, an execution was issued on the judgment by Buckland, as his own successor in office, he having been subsequently elected to the office, directed to M. Gilmore, one of the plaintiffs in error, as sheriff of Barton county. The sheriff levied upon certain wheat of plaintiff below, and this action was commenced August 16, 1880, to perpetually enjoin the judgment upon the ground that it was absolutely void, for the alleged reason that Buckland was neither *de facto* nor *de jure* a judicial officer. It appears from the record that Buckland was appointed by the governor on March 19, 1877, justice of the peace of Great Bend township, and thereafter duly qualified and entered upon the discharge of the duties of the office, and was placed in full possession of the books, papers and docket appertaining to such office. At the November election, 1877, W. H. Odell, A. J. Buckland, C. Goit and T. C. Polk were candidates for the office of justice of the peace in Great Bend township. Upon a canvass of the returns of the election, the canvassers issued to W. H. Odell and C. Goit certificates of election. Goit, to whom was issued the certificate as successor of Buckland, demanded of the latter the records and dockets of his

office, but he refused to deliver them up; hence the *quo war-ranto* proceedings above referred to. Up to the issuance of the certificate to Goit after the general election in November, 1877, Buckland was both a *de jure* and a *de facto* justice of the peace. After the issuance of the certificate of election to Goit, he was a *de facto* officer only, for though he was not a good officer in point of law, yet he had the possession of the books, papers and records of the office of justice of the peace, and continued to act as a justice of the peace until the rendition of the judgment in this court, and was recognized by a part of the public where he held the office, as a justice of the peace of the township. His acts, while acting as a justice of the peace *de facto,* upon principles of policy and justice, must be held valid so far as they involve the interest of the public and third persons.

Some of the special findings of the trial court seem to conflict with our opinion that Buckland was a *de facto* officer at the time of the rendition of the judgment attempted to be enjoined; but we think that the evidence in the record clearly establishes the position we have taken. The finding that Buckland was generally recognized as a justice of the peace of Great Bend township by a portion of the public at the time of the rendition of the judgment of June 28, 1879, and that he had not been ousted by the process of any court after his qualification under his original appointment at the time of the rendition of such judgment, justifies our conclusion. ( 2 Kent's Com. 295; 1 Abbott's Law Dict. 343; *State v. Carroll,* 38 Conn. 449–479; *Braidy v. Theritt,* 17 Kas. 468; 19 Am. Decisions, 61.)

"The reasons of public policy upon which it is held that the acts of an officer *de facto* are not to be called into question collaterally, but are valid as to third persons, may apply even to the case where such officer is a usurper and intruder. . . . Third persons, from the nature of the case, cannot always investigate the right of one assuming to hold an important office, even so far as to say that he has color of title to it by virtue of some appointment or litigation. If they see him publicly exercising its authority, if they ascertain

that this is generally acquiesced in, they are entitled to treat him as such officer, and if they employ him as such should not be subjected to the danger of having his acts collaterally called into question." (*Petersilia v. Stone*, 119 Mass. 467.)

While the acts of officers *de facto* are valid and binding as to the public and third persons from considerations of public policy, yet as to the person exercising the duties of the office they are invalid, and afford him no protection whatever.

The judgment of the district court will be reversed, and the case remanded with direction to enter judgment in favor of plaintiffs in error (defendants below).

All the Justices concurring.