[No. 1226.]

## THE STATE OF NEVADA ex rel. H. HARRIS, Relator, *v.* NOAH BLOSSOM, Treasurer of Douglas County, Respondent.

School Trustees—Title to Office—De Facto—De Jure.—If an office is filled, and the duties appertaining thereto are performed, by an officer *de jure*, another person, although claiming the office under color of title, cannot become an officer *de facto*.

APPLICATION for *mandamus*.

The facts stated in the opinion.

*T. Coffin*, for Relator:

I. The rule that the acts of *de facto* officers are good and binding acts in law, so far as the public and third parties are concerned, is well settled. The following authorities bear more or less directly upon the facts and points of this case, to the effect that the peremtory writ of *mandamus* ought to issue: *St. Luke's Church* v. *Mathews*, 4 Des. 578; 6 Am. Dec. 619; *In re Ah Lee*, 6 Saw. 410; *Mallett* v. *Uncle Sam*, 1 Nev. 188;[1] *Meagher* v. *Storey Co.*, 5 Nev. 245; *State* v. *Curtis*, 9 Nev. 325; *Cocke* v. *Halsey*, 16 Pet. 71; *Wilcox* v. *Smith*, 5 Wend. 232; 21 Am. Dec. 213; *State* v. *Anderson*, Coxe (N. J.) 318; 1 Am. Dec. 207; *Fowler* v. *Bebee*, 9 Mass. 231; 6 Am. Dec. 62; *Police Jury* v. *Haw*, 2 La. 41; 20 Am. Dec. 294; *Buckman* v. *Ruggels*, 15 Mass. 180; 8 Am. Dec. 98; *Burke* v. *Elliott*, 4 Ired. Law, 355; 42 Am. Dec. 142; *Bean* v. *Thompson*, 19 N. H. 290; 49 Am. Dec. 154; *Plymouth* v. *Painter*, 17 Conn. 585; 44 Am. Dec. 580; *Cooledge* v. *Brigham*, 1 Allen, 333; *Farmers' Bank* v. *Chester*, 6 Humph. 58; 44 Am. Dec. 318; *Schlencker* v. *Risley*, 3 Scam. 483; 38 Am. Dec. 100; *State* v. *Brennan*, 25 Conn. 283; *Trinity College* v. *Hartford*, 32 Conn. 480; *Sheehan's Case*, 122 Mass. 445;[2] *Petersilea* v. *Stone*, 119 Mass. 465.[3]

II. Whoever is in office under color of right, and in the actual performance of the duties of that office, is an officer *de facto*, notwithstanding what other claimants to the office may be pretending or attempting to do. (*State* v. *Carroll*, 38 Conn. 449; *Brown* v. *O'Connell*, 36 Conn. 437;[4] *People* v. *Kane*, 23 Wend. 414; *People* v. *White*, 24 Wend. 520; *Carleton* v. *People*,

1 90 Am. Dec. 484.    2 23 Am. Rep. 374.    3 20 Am. Rep. 335.    4 4 Am. Rep. 89.

10 Mich. 250;  *Clarke* v. *Com.*, 29 Pa. St. 129;  *Com.* v. *McCombs*, 56 Pa. St. 436;  *Taylor* v. *Skrine*, 3 Brev. 316;  *Cocke* v. *Halsey*, 16 Pet. 71;  *Ex parte Strang*, 21 Ohio St. 618.)

III.   I have been unable to find but three cases in which the record disclosed facts similar to those in this case; that is, where both a *de jure* and a *de facto* officer or board were attempting to exercise the functions of the same office at the same time.   These three cases support the position of relator that the new board was such a *de facto* board that its acts were valid and binding so far as the public and third parties were concerned.   (*People* v. *Staton*, 73 N. C. 546;  *Morton* v. *Lee*, 28 Kan. 288;  *Ex parte Norris*, 8 S. C. 408.)

IV.   There cannot be a *de facto* and *de jure* officer holding and exercising the functions of the same office at the same .time.   (*Cohn* v. *Beal*, 61 Miss. 398;  *Boardman* v. *Halliday*, 10 Paige, 223;  *McCahon* v. *Com'rs*, 8 Kan. 441;  *Morgan* v. *Quackenbush*, 22 Barb. 73.)

V.   During the time there was a contest pending, the new board was the proper one to remain in office, and to exercise all of the duties appertaining to such board.   (*State* v. *Durkee*, 12 Kan. 314;  *Braidy* v. *Theritt*, 17 Kan. 471;  *People* v. *Draper*, 24 Barb. 269.)

*D. W. Virgin*, District Attorney of Douglas County, for Respondent:

Summerfield was only an intruder, for he knew that Miss Davies had been employed by the old board to teach the public school, and that, consequently, there was no vacancy in said district, and that the new board had no right or authority, under the circumstances, to employ him as a public school teacher.   He was bound to know the law, and he did know the facts, and so did the relator when he purchased the warrants. And, in any event, Summerfield could not receive his pay for teaching, from the county of Douglas, or any of its funds, for at least he was only a *de facto* school teacher, and not entitled to be paid by the county of Douglas.   (*Meagher* v. *Storcy Co.*, 5 Nev. 244;  *Stratton* v. *Oulton*, 28 Cal. 44;  *Dorsey* v. *Smyth*, 28 Cal. 21.)

By the Court, LEONARD, J.:

Relator seeks to compel the payment of two certain warrants drawn by the auditor of Douglas County upon respondent, as treasurer thereof, on account of salary of S. Summerfield as teacher in school district No. 2, Douglas County, for the months of September and October, 1885, said warrants having been duly assigned to relator. In November, 1884, J. Q. Adams, H. Vansickle, and J. S. Childs were elected school trustees of said district for the term of two years. In March, 1885, the legislature passed an act providing for the election of new school boards in all the school districts of the state, on the second Saturday in May following, and also that the new trustees should assume the duties of their office on the first day of September, 1885.

Under the statute named, M. Harris and two other persons were elected trustees, and they thereafter qualified according to law. But one public school was required in said district, and on the fifteenth day of August, 1885, the old board held a public meeting, and employed a sufficient number of competent teachers for the ensuing school year, and M. Harris, one of the new trustees, was present at such meeting. Under the statute the school year commenced September 1, but it was the custom throughout the state to open schools on the first Monday in September, which, in 1885, was on the seventh day of the month. On the first day of September the new board took forcible possession of the only public school building in said district, against the protest of the old board, and installed therein as teacher the said Summerfield, who was cognizant of the fact that other teachers had been employed by the old board. On the seventh of September, and for a long time thereafter, the new board held forcible possession of said school building. On the morning of the seventh the old board went to the schoolhouse, and demanded the possession thereof for the purpose of commencing the school with the teachers employed by them. Possession was refused, and they then engaged another building in the district, and placed therein their said teachers, where they continued to maintain the public school, until, subsequently, the public school building was given up to them. Summerfield taught his school during the months of September and October. On the tenth of September, 1885, proceedings

were instituted in this court by the attorney general to determine which of the two contending boards was entitled to perform the duties of school trustees. On the seventh of November we decided that the second section of the statute, approved March 12, 1885, under which the members of the new board were elected, was unconstitutional, and that Adams, Vansickle, and Childs, constituting the old board, were the lawful trustees. (*State* v. *Harris, ante,* 222.) The new board did not at any time discharge the teachers employed by the old board, or notify them to discontinue their schools.

The principal ground urged by relator in support of his petition is, that Harris and others were the *de facto* board, and that their acts, as such, were good and binding in law as to the public and third parties. The general principle stated by counsel for relator, that, as to the public and third parties, the acts of *de facto* officers are binding, is well settled and admitted. But, applying it fully to the present case, is relator entitled to the writ sought? From the admitted facts, can it be said that M. Harris and his associates constituted the *de facto* board? There were two boards, each claiming that the other was unlawful, each urging and maintaining the validity of its own acts, each proceeding as though the other did not exist, in the matter of employing teachers, etc. The old board denied by word and acts that M. Harris and others were trustees, and continued to perform all the duties of such officers as though the statute of 1885 had not been passed, or the new board been elected. If M. Harris and his associates had not acted or pretended to act, it cannot be denied that the old board would have been trustees *de jure* and *de facto.* If the old was not the *de facto* board, it is not because it failed to exercise all the functions of a legal board, but it is because the new board did the same, and while so acting, the statute under which they were elected had not been declared unconstitutional by any competent tribunal.

It is undoubtedly true, as claimed by counsel for relator, that the new trustees would have become a *de facto* board if the old ones had not acted as such; but since they did act as above stated, were they not the *de facto* board? Two physical bodies cannot occupy the same space at the same time, and two persons cannot be officers *de facto* for the same office at the same time. If an office is filled, and the duties appertaining thereto

are performed, by an officer *de jure*, another person, although claiming the office under color of title, cannot become an officer *de facto*. (*McCahon* v. *Commissioners etc.*, 8 Kan. 441; *Boardman* v. *Halliday*, 10 Paige, 232; *Morgan* v. *Quackenbush*, 22 Barb. 80; *Cohn* v. *Beal*, 61 Miss. 399.)

The supreme court of Kansas has gone so far as to hold that a justice of the peace who refused to give up his office to his legally elected and qualified successor was the *de facto* justice, although, upon the latter's refusal to deliver up the office, the *de jure* justice obtained a new docket, and commenced also to act as a justice of the peace, and acted in such capacity until the trial in the *quo warranto* proceedings. (*State* v. *Buckland*, 23 Kan. 259; *Morton* v. *Lee*, 28 Kan. 286.) If the last case is good law, and as to that we express no opinion, it would sustain us in holding that the old was the *de facto* board, even though Mr. Harris and his associates had constituted the *de jure* board.

Counsel for relator refers us to *State* v. *Carroll*, 38 Conn. 449, wherein it was held that a justice of the peace, temporarily holding a city court, under a law alleged to be unconstitutional, was at least, under the circumstances of that case, an officer *de de facto*, if not *de jure*, and judgments rendered by him were valid. "An officer *de facto*," said the court, "is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid, so far as they involve the interests of the public and third persons, where the duties of the office were exercised    *    *    *    under color of an election, or appointment by or pursuant to a public unconstitutional law, before the same is adjudged to be such." Applying the doctrine announced to the facts of the case then under consideration, the court held that a justice of the peace of the town of New Haven, who, in the absence of the city judge of the city of New Haven, acted as judge of said city court, according to the provisions of a statute in force, which had not been declared unconstitutional by any competent court, was a *de facto* officer, even though the statute was in fact unconstitutional. That decision has been quoted with approval by all courts, so far as we know. It certainly meets with our approbation, and it would sustain the claim of relator if the facts were that the old board failed to exercise the functions of trustees, and the new one performed them.

The case of *People* v. *Staton*, 73 N. C. 546, is also referred to

and relied on by relator.   In the report of the case there is an agreed statement of facts, but it is also stated that "the case agreed sets out many other facts not pertinent to the case as decided in this court, and the same are therefore omitted.  All other facts necessary to an understanding of the case, as decided, are stated in the opinion of the court."   There was a vacancy in the office of superior court clerk, and, under the constitution, it was the duty of the judge of the superior court to fill the vacancy.  Judge Moore had been the judge for several years, but, the general assembly being of the opinion that his term had expired, an act was passed ordering an election.  " Under that act," says the court, " Judge Hilliard was elected and qualified, and took possession of the office, and held it, exercising all the duties and business of the office, until he was ousted under a decision of this court declaring the act under which he was elected unconstitutional.   So it is now clear that, for all the time from his election, qualification, and induction into office until he was ousted under the decision of this court, Judge Hilliard was not the rightful judge, but he was the judge in fact."   Indeed, it seems to have been taken for granted that Judge Hilliard was the *de facto* officer.   It appears that Judge Moore *claimed* the office, but it is not shown that he performed any of the duties incident thereto, except that he appointed Norfleet clerk, *two days after Staton had been appointed by Hilliard*, and that on the first day of the first term after Hilliard's election, when Hilliard had taken the seat usually occupied by the presiding judge, he demanded of Hilliard the seat as judge, which demand Hilliard refused; whereupon Judge Moore declared the court open for the transaction of business, and directed the sheriff to make proclamation.  This the sheriff declined to do.   The principal claim of the relator was, that since Hilliard was a *de facto* officer only, his appointee was merely a clerk *de facto;* but the court held that the appointments, like the judgments, of the *de facto* judge, had the same validity as though he had been a judge *de jure* and *de facto*.

In *State* v. *Harris, ante,* 222, we did not decide whether one board or the other was the *de facto* board.   The only question there presented was, Which was the *de jure* board?  We said a judgment of ouster must be entered against M. Harris and others, because their election was invalid, and, under claim of

right to the offices in question, they had exercised some of the functions of trustees, although the legal board had refused to give up their offices, and had continued to perform all the duties thereof.    Writ denied.