STATE *ex rel.* SCHOOL DISTRICT OF ORRICK, *Appellant,* v. DORTON *et al.*

Division Two, June 28, 1898.

1. **Officers:** DE JURE AND DE FACTO. Where there is but one office, there can not be one officer *de jure* and another *de facto*. The office can not be in the possession of two persons at the same time.

2. **Public Schools:** TREASURER: TENURE: ESTOPPEL. Under the statute the board of school directors shall "on or before the 15th day of July of each year, elect a secretary and treasurer, who shall enter upon their respective duties on the 15th of July." Parish was treasurer of the Orrick school, and on the fifth day of July the defendant "was elected treasurer for ensuing year," and on the same day Parish made a report, which was read and approved, showing a balance in his hands as treasurer of $5,260.61, and on the next day he as cashier transferred this amount to defendant on the books of his bank, and defendant, without having in any other way received the money, gave him a receipt therefor, and later in the day was himself elected cashier of the bank, which failed on July 16. *Held,* that, Parish's term of office having not expired at the time of defendant's appointment, there was no vacancy, and Parish remained treasurer and the

State ex rel. v. Dorton.

defendant was not responsible as treasurer *de jure* or *de facto*. *Held*, also, however, that, as Parish had this amount at the time to his credit as treasurer upon the books of the bank, and as defendant accepted Parish's check as treasurer for the amount to himself as treasurer, and this amount was transferred to him as treasurer on the bank's books, and as defendant received the bank's pass book with a credit thereon for the amount to him as treasurer, which book he exhibited to the directors and thereby induced them to believe he had the money, the defendant can be held responsible for the moneys claimed to have been received by him as treasurer of the school district, on the ground of estoppel.

3. ————: DENIAL OF CORPORATE EXISTENCE: ESTOPPEL. One can not receive money of a school district as its treasurer, and then deny, when sued for the money, that the district had been incorporated.

*Appeal from Ray Circuit Court.*—HON. E. J. BROADDUS, Judge.

REVERSED AND REMANDED.

*J. W. Garner, Jas. E. Ball* and *Joseph E. Black* for appellant.

(1) Dorton was a *de facto* officer, although he may never have taken the oath or given a bond as required by statute. *State v. Carroll*, 38 Conn. 471; Troop on Pub. Officers, secs. 629 and 630; *State v. Dieberger*, 90 Mo. 373; *Montry v. Muir*, 20 Mo. 303; *Cole Co. v. Dallmeyer*, 101 Mo. 57; Mechem on Pub. Officers, sec. 909; *Clark v. Slunly*, 66 N. C. 63; *Wilson v. Kimmel*, 109 Mo. 260; *Watkins v. Inge*, 24 Kan. 612; *Thompson v. State*, 21 Ala. 54; *Flournoy v. Clemants*, 7 Ala. 535. (2) The facts that Dorton was present at the time of his appointment; made no objection to the same; received the check for the moneys from Parish as treasurer, payable to him as treasurer; received the pass book with a credit thereon to him as treasurer; the transfer of the funds on the books of the bank from the credit of Parish as treasurer to himself as treasurer; his instructions to the clerk in the bank, have

estopped Dorton from denying he was an officer, when it is sought to hold him responsible for acts done under the color of office. Throop on Pub. Officers, secs. 169 and 664; Mechem on Pub. Officers, sec. 252; *Johnston v. Nelson*, 2 N. H. 202; Greenl. on Ev., sec. 1, p. 194; *State v. Stone*, 40 Iowa, 547; *McKee v. Montery Co.*, 51 Cal. 276; *Borden v. Houston*, 2 Tex. 594; *Morris v. State*, 47 Tex. 58; *U. S. v. Maurice*, 2 Brock, 96. (3) A person who undertakes an office and is in office, though he might not have been duly appointed, and therefore may have a defeasible title, and not have been eligible to serve therein, is from the possession of its authorities, and the enjoyment of its emoluments, bound to perform all of its duties, and is liable for their omissions in the same manner as if the appointment were strictly legal and his right perfect. *U. S. v. Maurice*, 2 Brock, 96; *Bank v. Eureka*, 109 Cal. 504; Mechem on Pub. Officers, sec. 300; *State v. Moore*, 74 Mo. 413; *State v. Pomele*, 67 Mo. 395. (4) The fact that Dorton, instead of demanding coin or currency from his predecessor, accepted Parish's check as treasurer, payable to him as treasurer and in lieu of getting the money thereon, deposited the same in bank to his credit as treasurer and permitted the same to remain in such bank, makes him liable for the money. *Bush v. Johnson Co.*, 48 Neb. 1; *Modisett v. Governor*, 2 Blackford, 135; *Armstrong v. Garrow*, 6 Cowen, 465; *Heald v. Bennett*, 1 Douglas (Mich.) 371; *Elliott v. Miller*, 8 Mich. 132; *State ex rel. v. Gates*, 67 Mo. 139; *Welch v. Frost*, 1 Mich. 30; 19 Am. and Eng. Ency. Law, pp. 544 and 546.

*J. L. Farris & Son* and *Garner & Divelbiss* for respondent.

(1) Where there is but one office, there can not be an officer *de jure* and an officer *de facto* at the same

time.   Throop, Pub. Officers, sec. 641, p. 605; *Board-men v. Halliday*, 10 Paige, 223; *Cohn v. Beal*, 61 Miss. 398; *Cronin v. Gundy*, 16 Hun. 524.   (2) The actual possession of an office by an officer *de jure* renders it impossible for another claimant to constitute himself an officer *de facto* by any performance of official acts, however, unequivocal they may be.  Throop, Pub. Officers, sec. 642, p. 606; *Auditors v. Benort*, 20 Mich. 176; *State v. Blossom*, 19 Nev. 312.   (3) In order to treat a person as an officer *de facto* he must not only act as such, but he must act, under claim, that he is the rightful officer.   And there must be a public office or he must be clothed with some symbol or outward token of public position that the public has a right to look upon as a legal investiture of official authority. This office is somewhat analogous to the office of notary public, and would be governed by the same principles in determining the question of *de facto* officer.  Throop, Pub. Officers, secs. 624, 645 and 646.   (4) Parish knew that his term of office had not expired, and that Dorton was not, and could not be treasurer until on and after the fifteenth day of July, 1895.   He therefore can claim no credit under the law for disbursements, if any had been made by him to John M. Dorton, nor would such an improper disbursement, relieved either he or his bondsmen from liability therefor in the event of loss.   The principle of *de facto* officers is to be invoked by the public or innocent parties dealing with a person who is invested with all the insignia of official authority and to facilitate public business.  Throop, Pub. Officers, sec. 650; R. S. 1889, sec. 8093.   (5) Appellant failed to establish its incorporation; which fact was put in issue by the affidavit of John M. Dorton. This particular district has been declared by our Supreme Court to have no legal capacity for suing and such decision becomes the special law for this

district. *Orrick School District v. Dorton*, 125 Mo. 439. (6) Even if Dorton is to be treated as a *de facto* officer, and even if appellant is to be considered as legally incorporated, yet Dorton received no money, was guilty of no neglect and the district was in no worse condition on the morning of the thirteenth of July, than it was on the evening of the sixth.

BURGESS, J.—This is a suit begun by the Orrick school district, against John M. Dorton, as treasurer of said district, to recover from him the sum of $5,120.61, alleged to have been received by him as treasurer of said district which he failed and refused to account for, or pay over to said school district.

Defendant recovered judgment in the court below, from which plaintiff appealed. Since the appeal has been pending in this court John M. Dorton died and the suit was revived in the name of and against James G. Dorton and William H. George, his administrators.

Defendant put in issue the organization of plaintiff as a school district, and its right to sue as such.

The facts as disclosed by the record are as follows:

On the fifth day of July, 1895, one L. T. Parish was treasurer of said school district. His term of office expired on the fifteenth day of said month. On the date first named the board of directors appointed John M. Dorton treasurer of said board for the ensuing year, his term to commence on the expiration of the term of Parish. On the day that Parish's term of office expired he filed his settlement as treasurer with the board of directors showing a balance in the treasury of $5,260.61. At this meeting a warrant was drawn on the treasurer in favor of one J. A. Settle for $20 and one in favor of Ball & Hamilton for $150. Dorton was required by the board to give bond as treasurer in the sum of $7,000.

On the sixth day of July, 1895, before his term of office was to begin, Dorton was induced by Parish, who was then cashier of the Farmers' Bank of Orrick, as well as treasurer of the school district, to execute his receipt to him as such treasurer for the sum of $5,260.61, the amount which he then had to his credit in the bank. With respect to this transaction, Dorton testified as follows:

"You will state if you know where you were on the sixth day of July, 1895. *A.* I was up at Orrick late in the evening between four and five o'clock. I was at home that morning not feeling very well. It was after banking hours; both banks were closed. *Q.* State what took place after you got up there between you and Mr. Parish and the other parties. *A.* I will state it the best I can; I'm not a very good hand to give in evidence; I goes up to Orrick and walking along and as I goes by the bank door Mr. Parish steps out and says, 'John come in here directly, want to see you.' I went on and directly as I comes back I called in there; he had closed up the bank and he says, we have got to have a meeting here this evening, and we will get all the directors here. I didn't say anything or speak anything about it. *Q.* What position did Mr. Parish occupy at that time? *A.* I might say that he was the whole thing; he was cashier at the time. *Q.* What position did he occupy in relation to the school district? *A.* He was treasurer of what was called the Orrick school district. *Q.* Did you meet and have a meeting that evening? *A.* The directors and we had a little meeting. Nothing said about this school matter until we got through with this other business. *Q.* What other business? *A.* He wanted to go off and attend to some other business and put me in as cashier. *Q.* Were you elected cashier that evening? *A.* Yes, sir. *Q.* What reason did he give for wanting you to

become cashier? *A.* He wanted to go to Archie, if I mistake not, and attend to some business there. *Q.* What else took place between you and Mr. Parish that evening? *A.* Very little, if anything. *Q.* Did you give him a receipt? *A.* For this $5,260.61? Yes, sir. *Q.* State how you happened to give him that receipt; did Mr. Parish ever pay you any money? *A.* I never saw a dollar of that school money while I was in the bank; if I did I never knew it. *Q.* Never gave you a dollar? *A.* No, sir. *Q.* State then how you happened to give him this receipt for $5,260. *A.* He and Mr. Ogg, Mr. Ogg was in the bank clerking at that time; he stated to us that everything was all right, and he stated he was on this bond for so many dollars and he was going to get off this bond if he could. We believed everything he said that evening; I never doubted his word before and never did until after that evening; I had always taken his word for everything. *Q.* He asked you to give him a receipt? *A.* Yes, sir, said he wanted to go down there; said he would be back in a few days; he says, 'I want you to give me a receipt;' I says, 'I don't want to do it, I have no bond.' Afterwards, at first I refused to sign that bond, etc. *Q.* When he resigned and you were elected cashier where did he say he was going? *A.* Going to Archie to attend to some business there; said he would be back in a short time. *Q.* On the evening after banking hours after the receipt, did you have any knowledge that the bank books had given you credit for $5,260 as school treasurer and that this check of $120 was being charged up to you as treasurer? *A.* No, sir, I had no idea of it, because I did not consider myself treasurer at that time and told Mr. Parish that I wasn't treasurer; had given no bond and didn't want to sign this receipt.''

At the time Dorton executed to Parish his receipt as treasurer for the school moneys, Parish, who was

then cashier of the bank, gave him a bank deposit book upon which it appeared that the $5,120.60 had been placed to Dorton's credit by him. The clerk of the bank testified that Dorton told him that he was treasurer of the school district, and to continue the business as he had done under Parish; that is in regard to paying warrants against the school district when they were presented. This however was denied by Dorton.

After the bank closed for the day on the evening of the sixth of July, 1895, the bank directors were called together, when Parish resigned as cashier of the bank, and John M. Dorton was elected to succeed him. The amount of cash in the Farmers' Bank at the time the check was drawn by Parish in favor of Dorton and in other banks subject to sight draft was $5,671.56. The amount of cash paid out by Dorton as cashier of the bank upon checks from July 6, to July 13, when it was found to be insolvent and closed its doors, was $14,-441.19. On the same day Dorton returned the bond which had been given him by the school board for execution as treasurer of the school district, declined to further act as treasurer and denied that he had ever been appointed treasurer or that he received the money as such.

It is conceded by defendants that John M. Dorton was legally appointed treasurer of the school district by its board of directors, but they contend that he was appointed for the ensuing year, commencing on July 15, 1895, and ending July 15, 1896, and that his appointment could not have taken effect at an earlier date than that of July 15, 1895, except in case of the death or resignation of the then treasurer, neither of which occurred. Upon the other hand plaintiff insists that Dorton accepted the office, and entered upon the discharge of his duties as treasurer at once, and as such received the moneys sued for, and is estopped to deny

that he was treasurer even though not legally appointed, which is not conceded.

School districts of the character of plaintiff derive their authority to appoint their treasurers and secretaries from section 8087, Revised Statutes 1889, which provides that the board of directors shall "on or before the 15th day of July of each year, elect a secretary and treasurer, who shall enter upon their respective duties on the 15th day of July." Now the order appointing Dorton treasurer of the school district was made on the fifth day of July, 1895, ten days before the term of Parish expired. It is as follows: "On motion, J. M. Dorton was elected treasurer of school district for ensuing year." At this same meeting L. T. Parish, treasurer, made a report which was read and accepted, showing a balance of school moneys in his hands as treasurer of $5,260.61. Parish's term of office not having expired at the time of the appointment of Dorton, there was no vacancy in the office of treasurer, and the board was without authority to appoint a treasurer for his unexpired term; besides it is manifest that they did not intend to do so.

But plaintiff insists that Dorton was *de facto* treasurer of Orrick school district, and was acting as such under color of his appointment and received the moneys sued for in his official capacity. As the same office can not be in the possession of two different persons at the same time (Throop on Public Officers, sec. 641; *Cohn v. Beal*, 61 Miss. 398; *Cronin v. Gundy*, 16 Hun. (N. Y.) 520), this position seems to us to be untenable, and we have already said that Parish's term of office had not expired at the time it is contended that Dorton was appointed his successor. In *Boardman & Perry v. Halliday*, 10 Paige (N. Y.) 232, it is said: "Where there is but one office there can not be an officer *de jure*, and an officer *de facto*, both in possession of the

office at the same time." So that, as Parish was in the rightful possession of the office of treasurer he was treasurer *de jure*, and while such there could be no such thing with respect to the same office as a treasurer *de facto*. "If one is in, the other claimant is out, and the law never has tolerated any other theory." *The Auditor of Wayne County v. Benoit*, 20 Mich. 180 and *State ex rel. v. Blossom*, 19 Nev. 312, are to the same effect. We must from these observations hold that Dorton was not treasurer *de facto* of the school district prior to July 15, 1895.

If Dorton can be held responsible as treasurer of the school district for the moneys claimed to have been received by him as such it must be upon the ground of estoppel, and not otherwise.

Biglow on Estoppel [4 Ed.] 445, says: "Estoppel *in pais* may be defined to be a right arising from acts, admissions, or conduct which have induced a change of position in accordance with the real or apparent intention of the party against whom they are alleged."

The facts and circumstances upon which it is insisted by plaintiff that Dorton is estopped to deny that he was treasurer of the school district, are that he was present at the time of his appointment and made no objections to the same; received the check for the moneys from Parish as treasurer, payable to him as treasurer; received the pass book with a credit thereon to him as treasurer; the transfer of the funds on the books of the bank from the credit of Parish as treasurer to himself as treasurer and his instruction to the clerk in the bank to do just as he had been doing with respect to paying out the school moneys.

To the first proposition we are unable to agree, for it is impossible that Dorton could have accepted the appointment of treasurer of the school district for the unexpired time of Parish, for the obvious reason

that there was no vacancy, as Parish had not resigned, nor had the office in any way become vacant. It is equally clear that the appointment was for the next ensuing year beginning on the fifteenth day of July, 1895, and ending on the corresponding day of the next ensuing year. He could not accept that which the board of directors of the school district had no power to grant.

The question then is, do the other facts relied upon by plaintiff by way of estoppel bring the case within the rule announced by Biglow, *supra?* Dorton did not in fact receive from Parish a dollar of the moneys belonging to the school district, nor did he have any legal right as treasurer or otherwise to receive it. But the evidence showed that Parish had to his credit as treasurer of the school district in Farmers Bank of Orrick the amount of money sued for, and, that he gave Dorton as treasurer his check as treasurer, for said amount, which was accepted by Dorton and the money transferred to his credit upon the books of the bank. This check was a transfer to Dorton of the amount of Parish's deposit, and when accepted by the bank and the funds transferred to Dorton's credit as treasurer upon its books with his knowledge and consent, and he received the bank pass book given to him by Parish, showing that the fund had been placed to his credit as treasurer, he will be estopped from asserting the contrary.

*Bush v. Johnson Co.*, 48 Neb. 1, was an action against a treasurer who had not in fact received the money sued for, but had received a certificate of deposit therefor in a bank which subsequently failed. The court said: "The fact that he elected to take a certificate of deposit, evidencing the indebtedness of a bank to his predecessor in office for the amount, instead of coin or currency, and to have the certificate canceled and a new one issued payable to himself as county treasurer,

and to let the money remain in the bank and to carry the same, can not affect his liability. He became possessed of the right to the six thousand dollars of the funds of the county and liable for its safe keeping, and to account for it. This was a sufficient reception of the money of the county to render him liable." Dorton was under no obligations to receive Parish's check on the bank for the money. It was voluntary upon his part, but when he did receive it, and the money was transferred by the bank to his credit, it became his debtor instead of the debtor of Parish. He could have demanded the money of the bank at any time thereafter but chose to permit it to remain there to his credit for several days, before the bank was discovered to be insolvent and its doors closed, during which time Dorton was its cashier and failed to withdraw the fund. Having received the money as and for the school district, though not *de jure* nor *de facto* its treasurer, he must be held to account for it.

The board of directors were misled by Dorton. He induced them to believe that he had the money, and in confirmation thereof exhibited his bank pass book, showing that the amount of the school money had been placed to his credit by the officers of the bank.

It is also insisted by defendants that there was no evidence adduced tending to show that plaintiff was ever incorporated as a school district, and, that as that question was put in issue by Dorton by affidavit, the plaintiff is not entitled to recover. But that question can not be raised by defendants in this case for the reason that Dorton received the money sued for as treasurer of the school district, and can not now, when sued for the money, deny its corporate existence.

This case is not like that of *Orrick School District v. Dorton*, 125 Mo. 439, which is relied upon by defendant.

In that case Dorton had done nothing to estop him from raising the question of the plaintiff's incorporation, while in the case at bar the money was received by Dorton as treasurer of the school district, and he will not be permitted to assert to the contrary.

Our conclusion is that the judgment should be reversed, and the cause remanded for further trial. It is so ordered. GANTT, P. J., and SHERWOOD, J., concur.